IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CUMBERLAND HEIGHTS FOUNDATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:10-cv-712 |
| MAGELLAN BEHAVIORAL HEALTH, INC., | ) ) ) | Judge Nixon/Magistrate Judge Griffin |
| Defendant. | ) ) | |

---

## DECLARATION OF KAY COX

---

Comes now the Declarant, Kay Cox, and declares and states as follows:

1.      I am over the age of eighteen (18) years and competent to make this Declaration.

2.      The facts stated in this Declaration are based on my personal knowledge or based on my review of the business and clinical records of Magellan Health Services, Inc. and Magellan Behavioral Health, Inc.

3.      I am the Chief Clinical Officer for Magellan Health Services, Southeast Care Management Center ("Southeast CMC"). I have occupied this position for the preceding two (2) years. I have been employed by Magellan for a total of ten (10) years, in a number of positions other than my current position, including Manager of Clinical Services, Clinical Supervisor and Senior Care Manager in the Southeast CMC.

4.      In my position as Chief Clinical Officer, I have the responsibility to manage overall development and management of clinical operations for a fully integrated managed behavioral health care program. My accountabilities include commercial HMO, POS,

PPO, indemnity, Medicare health plans, large employer groups, and state employee groups, including authorization for all requests for benefits for healthcare services to be provided to individuals who are Magellan members ("member"). In my role as Chief Clinical Officer, I am familiar with the process by which authorization for requests for benefits for healthcare services are obtained by our members or a healthcare provider ("provider") on a member's behalf and the process by which a member or a provider on the member's behalf may appeal any decision to deny authorization of a request for benefits for healthcare services.

5.      Magellan has adopted specific policies and procedures governing the manner in which a member or a provider requests authorization for benefits (the "Authorization Policies") for a provider to provide covered services to our members and in which Magellan performs prospective, concurrent and retrospective reviews of requests for benefits for healthcare services provided to our members.

6.      In addition, Magellan has adopted specific policies and procedures governing the rights of our members and their providers on behalf of our members to appeal the denial of a request for authorization of benefits for healthcare services and establishing the process by which such appeals will be conducted (the "Appeal Policies").

7.      Magellan communicates its policies and procedures regarding authorization and appeals, including the specific information a facility provider is required to provide to Magellan in connection with pre-authorization of the initial request for benefits and with concurrent review authorization of a request for additional benefits through Magellan's National Provider Handbook and Magellan's Organizational Provider Supplement. Both the National Provider Handbook and the Organizational Provider Supplement are made available to all in-network providers, including through Magellan's website, www.magellanprovider.com. Organizational providers, which include facilities, agencies and community mental health

centers, are required to be familiar with Magellan's clinical review documentation requirements that are set out in the Organizational Provider Supplement.

8.     I have generally described below the process by which a member or a provider on a member's behalf may request pre-authorization of benefits for healthcare services and request and participate in a review of a decision to not authorize any request for benefits for healthcare services. However, the Authorization Policies, the Appeal Policies, the National Provider Handbook and the Organizational Provider Supplement provide a detailed description of the specific policies and procedures, as well as timeframes, governing requests for pre-authorization, concurrent review, and retrospective review of requests for benefits, and for appeals of decisions to not authorize requests for benefits by a member or by a provider on a member's behalf.

9.     With respect to pre-authorization of the initial request for benefits, upon presentation to the provider, the provider is required to conduct an intake assessment of the member. During the intake assessment, the provider is required to obtain personal and clinical information from the member to enable the provider to assess whether the provider is the appropriate healthcare provider to address the member's clinical needs. More specifically, the provider obtains information such as personal information, medical history, a description of the member's current situation, current medications, and the name, amount, frequency of use and last use of any legal and illegal substances used by the member.

10.     If the provider determines that it can provide the level of care that is appropriate for the member, the provider contacts Magellan Customer Service to request pre-authorization of benefits for the proposed healthcare services. The member's personal information is verified and a file is created for the proposed healthcare. The Magellan Customer Service Associate transfers the request to a Magellan Pre-certification Care Manager to complete

the pre-authorization process. All of Magellan's Care Managers are licensed behavioral health clinicians.

11.     Based on information collected from the provider, the Pre-certification Care Manager reviews the clinical aspects of the provider's request for benefits for the proposed healthcare services against the established medical necessity criteria required under the member's health plan or insurance coverage.

12.     Following a template prepared by Magellan, the Pre-certification Care Manager solicits additional information from the provider concerning the member and the proposed healthcare services.

13.     The template generally includes information such as the member's name, date of birth and phone number; level of care requested; admission date and status; admitting facility; UR contact; diagnosis; risk factors necessitating admission; support systems; type and frequency of substances abused; medications; previous treatment; treatment goals and treatment plan as recommended by the provider; discharge plan; whether medical necessity criteria are met; number of days authorized; recommended alternative location for treatment and availability; agreement that UR contact will communicate determination to member; verification of member's personal information; and additional comments.

14.     Magellan Care Managers are entirely dependent upon providers to supply complete and accurate personal and clinical information concerning the member and the proposed healthcare services in order for the Care Manager to make an informed decision whether the proposed healthcare satisfies the applicable established medical necessity criteria under the member's health plan or other insurance coverage.

15.     Magellan's customers select the medical necessity criteria that are to be used by the Care Managers in connection with their review of requests for pre-authorization

approval of benefits for proposed treatment under a member's health plan or other insurance coverage. The medical necessity criteria may be developed by the customer, a third party or by Magellan.

16. The Magellan Pre-certification Care Manager evaluates the information provided by the provider during the initial pre-authorization process, the terms of the member's benefit plan or insurance coverage and the Medical Necessity Criteria (or other medical necessity criteria for members of a particular customer), and either will authorize the request for benefits and determine the number of days of care for which the member is authorized under the member's health plan or other insurance coverage or will inform the provider that he or she cannot authorize the requested benefits. If the coverage is authorized, Magellan assigns an authorization number to be referenced by the provider to obtain reimbursement for the healthcare services provided.

17. After the initial authorization of benefits by the Pre-certification Care Manager, the member's case is forwarded to a Magellan Concurrent Review Care Manager who is responsible for reviewing all requests for benefits for additional treatment for the member.

18. On the last authorized day for treatment, the Concurrent Review Care Manager contacts the provider to determine whether the discharge will take place or whether the provider will request authorization for additional treatment. If the provider requests authorization for benefits for additional treatment, the Concurrent Review Care Manager will initiate a concurrent review of the request for benefits for additional treatment and obtain an update on the member's clinical condition.

19. Based on the information provided to the Magellan Concurrent Review Care Manager by the provider, the Concurrent Review Care Manager's discretion, the terms of

the member's benefit plan and the applicable medical necessity criteria, the Concurrent Review Care Manager determines whether additional days of treatment are authorized.

20.     Care Managers are not authorized to deny a request for authorization of benefits for facility treatment. Only a physician may deny such a request. If a Magellan Care Manager cannot authorize a request for benefits, in whole or in part, either during a request for pre-authorization approval of benefits or a request for concurrent review authorization of additional benefits, a peer-to-peer consultation between the provider and a Magellan Physician Advisor is available by telephone or electronically to discuss the request for benefits. An appeal coordinator will attempt to schedule the peer-to-peer consultation with the provider. If the appeal coordinator is unable to schedule a peer-to-peer consultation with the provider, the appeal coordinator will forward the clinical information collected by the Care Managers to the Magellan Physician Advisor for review. Based on the information provided, the Magellan Physician Advisor either authorizes benefits for the treatment or denies the request for authorization. If the Magellan Physician Advisor denies the request for authorization and was not able to schedule a peer-to-peer consultation with the provider prior to making the decision, another peer-to-peer consultation is attempted with another Magellan Physician Advisor.

21.     If the Magellan Physician Advisor denies the request for authorization of benefits, the provider and the member are offered an informal provider review. A different Magellan Physician Advisor is assigned to review the decision. The second Physician Advisor is provided the information collected by the Care Managers and the decision and rationale for the decision made by the first Magellan Physician Advisor in connection with the peer-to-peer consultation. The Appeal Coordinator will attempt to schedule a peer-to-peer discussion with the provider to discuss request for benefits. Based on the Physician Advisor's review of the

information provided, the Physician Advisor either will authorize the request for benefits for the proposed treatment or deny the request for authorization.

22.     If the request for pre-authorization or concurrent review authorization is denied, in whole or in part, the member and the provider are given notice of the decision.  The notice includes the reason(s) for the non-authorization, the clinical rationale used in the making the medical necessity determination, if any, and a description of the appeal rights and the process by which the member or the provider on the member's behalf may appeal the decision.

23.     Generally speaking, the member or the member's authorized representative is permitted to submit, verbally or in writing, information that they believe is relevant or necessary in order to make a meaningful appeal, including comments, documents, records or other information relating to the appeal.

24.     If an appeal of Magellan's initial adverse authorization decision is requested, the information submitted by the member or the member's representative is reviewed by an individual who was not involved in the benefit determination that is the subject of the appeal and who is not a subordinate of the individual who made the determination that is the subject of the appeal.  If the appeal requires a decision based on medical necessity, it is reviewed and decided by a Physician Advisor who was not involved in the benefit determination that is the subject of the appeal and who is not a subordinate of the individual who made the determination that is the subject of the appeal.

25.     Notice of the decision on appeal is provided to the member and the affected provider.  If the decision results in a reversal of an unfavorable benefit determination, the member and affected provider are notified of the approved covered service.  If the unfavorable benefit determination is upheld on appeal, the member and the affected provider are provided, among other information, a description of the next level of appeal or voluntary appeal

procedures available to the member, if any, including access to an external independent review organization, as applicable.

26. The focus of the authorization and appeal process is to bring professionals together to make the best clinical decisions for the care of Magellan members within the parameters of the members' insurance coverage or health benefit plan. It is <u>not</u> an adversarial process in which someone wins or loses, or could become upset about the ultimate decision. Magellan functions almost as a neutral, using information gathered and communicated by the provider to apply "medical necessity" criteria adopted by its customer in the context of the members' insurance policy or health benefit plan. The "peer-to-peer" consultation is not a debate, but a discussion between professionals, relying on information from the provider, about their opinions regarding the appropriate level of care.

27. The multi-step authorization and appeal process outlined above is designed to ensure that appropriate benefits determinations regarding treatment may be made. Importantly, throughout this multi-step review process, the providers, such as Cumberland Heights, supply and control all of the information presented, and the providers essentially act as advocates for the patients' proposed treatment plans. This review process is entirely dependent upon the patient information collected by the providers, again emphasizing the need for providers to gather, compile and report complete and accurate information to Magellan.

28. The overriding goal of this process is to assure that the appropriate levels of care based upon medical necessity, under criteria selected by Magellan's customers and within the parameters of Magellan members' insurance policies or health benefit plans, are provided to the members.

29. As Chief Clinical Officer, I have overall responsibility for the clinical operations of the Southeast CMC, which would include the Magellan Care Managers who

routinely interacted with the Cumberland Heights facility regarding authorization for benefits and who interacted with the facility following termination of the provider Agreement.

30. In my experience as Chief Clinical Officer, Cumberland Heights tends to try to maximize the benefits and services provided to Magellan members. In other words, Cumberland Heights' treatment plans appear to be based on the benefits available to a Magellan member (i.e., number of days authorized), rather than the member's clinical needs.

31. Upon termination of the provider agreement in July 2010, Magellan recognized that its members at Cumberland Heights might have special needs or sensitivities and assigned care managers to assist its members in making decisions about the continuity of their care. Notwithstanding, Cumberland Heights determined which members would be transferred to which facilities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2010.

_____
Kay Cox