Cumberland Heights Foundation, Inc. v. Magellan Behavioral Health, Inc.
United States District Court for the Middle District of Tennessee
Civil Action No. 03:10-00712

Affidavit of Gary M. Henschen, M.D.

Exhibit 2 – August 6, 2010 Letter (redacted)

REDACTED



Jim Moore
Chief Executive Officer
Cumberland Heights
PO Box 90727
Nashville TN 37209

August 6, 2010

Dear Mr. Moore:

As you know, Magellan Health Services ("Magellan") conducted a treatment record review onsite at Cumberland Heights on June 30, 2010. This site visit was in follow-up to the Corrective Action Plan that Magellan issued to Cumberland Heights in March 2010. Magellan reviewed its site visit findings with Cumberland Heights at the exit interview, which was held at the conclusion of the site visit. For your reference, those findings are summarized below.

The June 30, 2010 site visit was the culmination of a provider review process that has repeatedly identified quality of care issues at Cumberland Heights. It is a standard process for Magellan to conduct follow-up reviews of treatment records when potential qualities of care issues have been brought to its attention. On October 16, 2009, following the identification of such issues, the Magellan Regional Network Credentialing Committee ("RNCC") sent a letter to Cumberland Heights requesting that the facility submit documentation for review. Cumberland Heights submitted the requested records, which Magellan reviewed. Based on issues identified, Magellan elected to do an onsite review of additional patient treatment records. That site visit, occurring on January 14, 2010, revealed significant deficiencies in treatment record documentation and in the quality of care. The RNCC elected to issue a Corrective Action Plan, in March 2010, giving Cumberland Heights the opportunity to meet Magellan's standards. Cumberland Heights replied to the March Corrective Action Plan in a letter dated April 5, 2010. To assure that Cumberland Heights was complying with the Corrective Action Plan in place, the site visit of June 30 was scheduled.

The Magellan participants for the June 30, 2010 site visit included:

Gary Henschen, MD Chief Medical Officer-Behavioral Health
Dennis Workman, MD Associate Medical Director SE CMC
Steve Stiber, Clinical Reviewer Medical Services SE CMC
Jacqueline Kline, Special Investigations Unit
Susan Jameson, Senior Area Contract Manager SE

A sample of 25 treatment records were requested in advance of the site visit for review. Time did not allow for a review of all of those records; accordingly, the findings below are based upon a review of eight records. The Magellan review team's findings were as follows:

*Improvement Noted:* Magellan found progress toward meeting some of the goals of the Corrective Action Plan. In particular:

- Biosocial evaluations were comprehensive and provided good clinical review.
- Clinical documentation reflected general improvement over prior review.
- Medical Director notes were well written.

*General Areas of Concern:* Despite the Corrective Action Plan, the Magellan review team continued to find significant deficiencies in the recordkeeping and quality of care at Cumberland Heights. In particular:

- Notes completed by other MDs were cursory and lacked necessary medical information. Accurate, thorough and timely documentation is critical to the coordination and continuity of the patient's care, including assessment of co-morbidities, medical, psychological, social and environmental concerns.
- Mental Status Examinations were largely incomplete and failed to provide information important to the coordination of patient care.
- Charts for members with co-morbid medical conditions lacked documentation of needed medical consultations. Given the frequent interplay of medical and psychological issues, the lack of documentation places our members at risk, and specific examples of such risks are described below.
- Charts for members with co-morbid conditions did not indicate that medication interactions were reviewed and documented.
- Treatment plans were not signed in the majority of charts. Not only is this required, but the absence of signatures prevents everyone who reviews the chart from knowing the identity of the person who recommended a course of treatment and the opportunity to fully discuss treatment options.
- Chart entries were signed with initials rather than a full signature.
- Family sessions were not documented or did not occur in a timely manner. On average, family sessions occurred during the third week of treatment. Magellan regards the family support group to be critically important to the member's treatment, both while in the facility and especially upon discharge.

*Specific Patient Concerns:* As previously stated, at the June 30, 2010 site visit, Magellan reviewed a sampling of treatment records for Magellan members. Specific patient concerns found included:

- . – Clinical note stated physician told the member to "go home and call her dealer"; the member then asked for a phone and left against medical advice.
- – Patient with dual diagnosis (substance abuse and depression) was admitted on Lexapro but chart noted that a psychiatric evaluation was not completed because the patient was being seen by an outside psychiatrist; however, Magellan reviewer believed a psychiatric evaluation should have been done.
- . – Nursing assessment note documented drug allergy to Penicillin; however, all other chart documentation stated NKDA (no known drug allergy). The inconsistency in this member's chart suggests a failure to adequately assess the member for drug allergies and document same.
- . – Psychiatric evaluation was ordered on          however, a psychiatric evaluation was not completed until         .
- . – Family session did not occur timely.
- – Family session did not occur timely.

- – Medical complications of Addison's disease were known to the attending physician regarding this patient with orthostatic hypotension resulting in fainting and transfer to outside acute hospital where a bowel obstruction was discovered. The patient was on Nortriptyline and Coumadin, however, there is no documented indication that medications were reviewed or discontinued. Further, no attempt was made to address patient's pain.
- . – Magellan authorized 3 days of detoxification; however, facility documented a COWS level of 1 with no detoxification protocol needed/provided; however, patient should have been stepped down to the next level of care rather remaining in detoxification.
- – Patient with depression had several medical complications noted in treatment record, without corresponding documentation of assessment and treatment. These conditions included:
  - Hypothyroidism; however, there was no documentation of thyroid function tests being performed or medication prescribed.
  - Lumbar disc disease with significant pain contributory to addiction to pain meds; however, no documented neurological evaluation or exam, no documented attempt to secure neurological consultation, no documented treatment plan to address pain in connection with addiction issues, and physical exam performed by nurse practitioner
  - This patient had undergone a psychiatric hospitalization one year before admission to Cumberland Heights for depression related to marital problems; however, there was no documentation of family sessions being conducted during stay at Cumberland Heights.
- – Psychiatric evaluation was recommended in biopsychosocial evaluation due to patient report of depression with dysphoric mood and affect; however, no psychiatric evaluation found in chart.
- – Marital discord identified as an issue upon admission; however, no family session was conducted until third week after admission.
- – No biopsychosocial evaluation was found in chart despite 9-day length of stay with no documentation of mitigating factors to explain lack of evaluation; facility policy states, however, that biopsychosocial evaluation is to be completed within five days of admission, inclusive of detoxification days.

In summary, Magellan's follow-up review revealed the continued existence of significant documentation and quality of care issues, particularly related to the identification and treatment of co-morbidities but in other critical areas of care as well. Based on the seriousness of the concerns identified, this matter was forwarded to Magellan's RNCC for consideration of next steps with regard to Cumberland Heights' ongoing participation as a Magellan network provider.

Sincerely,

T Brian Kennedy MD
Medical Director
Southeast Care Management Center

cc:     Provider File

*Magellan Health Services*                                         *Getting Better All the Time*[SM]